UNITED STATES DISTRICT COURT
SOUTHERN DIVISION OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TIMEGATE STUDIOS, INC., <br> Plaintiff, <br> <br> VS. <br> <br> SOUTHPEAK INTERACTIVE CORP., <br> SOUTHPEAK INTERACTIVE, LLC, <br> GONE OFF DEEP, LLC, <br> TERRY M. PHILLIPS, AND <br> MELANIE MROZ, <br> Defendants. | § § § § § § § § § § § § | CIVIL ACTION 4:09-CV-03958 |

**FINAL JUDGMENT CONFIRMING ARBITRATION AWARD**

CAME ON for consideration this day the mandate issued to this Court on April 29, 2013, by the United States Court of Appeals for the Fifth Circuit in Case No. 12-20256, in which the Fifth Circuit reversed this Court's Memorandum and Order of March 20, 2012 [Docket No. 194] and directed this Court to confirm the award rendered in the arbitration conducted by the American Arbitration as Case 70 117 Y 00673 10 in Travis County, Texas, which award consists of the *Final Award, Findings of Fact and Conclusions of Law* rendered, signed, and ordered on November 3, 2011, and the *Disposition for Application of Modification of Award* rendered, signed, and ordered on January 4, 2012, both of which documents are attached hereto (collectively, the "Award"). This Court, therefore, FINDS, DECLARES, and ORDERS as follows:

This Court CONFIRMS, ADOPTS and INCORPORATES the Award, and the Findings of Fact and Conclusions of Law set forth therein, as though fully set forth herein and made by this Court. To the extent of any conflict between the Award and this Final Judgment, this Final Judgment controls.

This Court therefore ORDERS that plaintiff TimeGate Studios, Inc., take nothing by way of its claims against any of the defendants.

This Court further ORDERS that defendants SouthPeak Interactive, LLC, and Gone Off Deep, LLC, as alter egos and/or assignees of each other, have and recover the sum of $7,349,733.57 from plaintiff TimeGate Studios, Inc., plus pre-judgment interest at 6% per annum on said amount from December 10, 2009, through the date this Final Judgment is signed.

This Court further DECLARES that: (1) the "Publishing Agreement" dated June 15, 2007, by and between defendant Gone Off Deep, LLC, and plaintiff TimeGate Studios, Inc., was not terminated on or about December 10, 2009, but remains in full force and effect as amended by the Award; and (2) the "Agreement" dated October 10, 2008, by and between defendant Gone Off Deep, LLC, and defendant SouthPeak Interactive, LLC, is a valid sublicense of the rights granted to defendant Gone Off Deep, LLC, in the above-referenced Publishing Agreement.

This Court further ORDERS that defendants Gone Off Deep, LLC, and SouthPeak Interactive, LLC, as alter egos and/or assignees of each other, have and recover their reasonable and necessary attorney's fees from plaintiff TimeGate Studios, Inc., in the amount of $981,479.55 through the date of this Final Judgment.

This Court further ORDERS that defendants Gone Off Deep, LLC and SouthPeak Interactive, LLC, have and recover from plaintiff TimeGate Studios, Inc., the administrative fees and expenses of the American Arbitration Association and the compensation and expenses of the arbitrator in the amount of $50,488.11.

This Court further ORDERS that post-judgment interest shall collect on this Final Judgment at 5% per annum from the date this Final Judgment is signed until paid.

This Court further ORDERS that all costs of court shall be assessed against plaintiff TimeGate Studios, Inc.

This Court further ORDERS that there is no just reason for delaying enforcement of this Final Judgment, and this Court orders execution to issue for this Final Judgment and grants defendants Gone Off Deep, LLC, and SouthPeak Interactive, LLC, all writs and citations necessary to enforce this Final Judgment; provided, however, that nothing herein shall authorize a writ or citation to issue against a debtor in a bankruptcy case in violation of the stay imposed by 11 U.S.C. § 362.

This Final Judgment is a final judgment that disposes of all issues and parties in this civil action, and is appealable. All relief not expressly granted herein is hereby denied.

SIGNED this 6th day of January, 2013. 2014

_____
THE HONORABLE KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

## American Arbitration Association

| | |
|---|---|
| In the Matter of the Arbitration Between: § <br> § <br> TimeGate Studios, Inc. § <br>         Claimant, § <br> § <br> and § <br> § <br> Gone Off Deep, LLC dba Gamecock Media Group; § <br> SouthPeak Interactive, LLC; SouthPeak Interactive § <br> Corporation; Terry Phillips. § <br> § <br>         Respondents. § | Case: 70 117 Y 00673 10 |

## FINAL AWARD, FINDINGS OF FACT AND CONCLUSIONS OF LAW

This evidentiary hearing (the "Hearing") for this arbitration was held in Austin, Texas on April 26, 27, 29, and 29, 2011 and July 12, 13, 14, and July 15, 2011 before Peter Vogel (the "Arbitrator"), whose appointment as Arbitrator was agreeable to all of the parties. The Hearing was suspended on July 15, 2010 to permit parties to submit post-hearing briefing. Briefing was submitted by all parties in accordance with the Arbitrator' order, and the arbitration hearing was formally closed on September 24, 2011. Any finding of fact that is actually a conclusion of law should be treated as such. Any conclusion of law that is actually a finding of fact should be treated as such. The Arbitrator issues these findings of fact and conclusions of law with respect to claims by and against Claimant TimeGate Studios, Inc.

## FINAL AWARD

Based upon the Findings of Fact and Conclusions of law set forth below, the Arbitrator hereby awards to Respondents Gone Off Deep, LLC, and SouthPeak Interactive, LLC, as alter egos and/or assignees of each other, the sum of *$7,349,733.57*, which Claimant TimeGate Studios, Inc., shall pay, plus pre judgment interest at 6% per annum on said amount from

FINAL AWARD, FINDINGS OF FACT AND CONCLUSIONS OF LAW - PAGE 1 OF 15

December 10, 2009, through the date this Award is entered as a judgment, and post judgment interest at 5% per annum on such collective award from the date this Award is entered as a judgment forward.

The Arbitrator further awards to Respondents SouthPeak Interactive, LLC, and to Respondent Gone Off Deep, LLC, declarations that: (1) the "Publishing Agreement" dated June 15, 2007, by and between Respondent Gone Off Deep, LLC, and Claimant TimeGate Studios, Inc., was not terminated on or about December 10, 2009, but remains in full force and effect as amended by this Award; and (2) the "Agreement" dated October 10, 2008, by and between Respondent Gone Off Deep, LLC, and Respondent SouthPeak Interactive, LLC, is a valid sublicense of the rights granted to Respondent Gone Off Deep, LLC, in the above-referenced Publishing Agreement.

The Arbitrator further awards to Respondents SouthPeak Interactive, LLC, and to Respondent Gone Off Deep, LLC, their reasonable and necessary attorney's fees, which Claimant TimeGate Studios, Inc., shall pay, in the amount of:

*$831,479.55* through the date of the Award;

$75,000.00 in the event that Claimant files a motion seeking to set aside or alter the Award, and Respondents, or any one of them, prevail;

$50,000.00 in the event that Claimant appeals the Award, or any judgment arising from the Award, to the United States Fifth Circuit Court of Appeals, and Respondents, or any one of them, prevail;

$25,000.00 in the event that the Fifth Circuit Court of Appeals requests oral argument, and Respondents, or any one of them, prevail;

$50,000.00 in the event that Claimant or Respondents appeal the Award, or any judgment

**FINAL AWARD, FINDINGS OF FACT AND CONCLUSIONS OF LAW - PAGE 2 OF 15**

arising from the Award, to the United States Supreme Court, and Respondents, or any one of them, prevail;

$75,000.00 in the event that the United States Supreme Court requests oral argument, and Respondents, or any one of them, prevail.

The administrative fees and expenses of the American Arbitration Association totaling $28,150.00, and the compensation and expenses of the arbitrator totaling $69,576.22 shall be borne by Gone Off Deep, LLC. Therefore, Gone Off Deep, LLC is liable to reimburse SouthPeak Interactive, LLC the sum of $50,488.11, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by SouthPeak Interactive, LLC.

## FINDINGS OF FACT

1. Claimant is TimeGate Studios, Inc. ("TimeGate.")

2. Respondents are SouthPeak Interactive Corporation ("SIC"), SouthPeak Interactive, LLC ("SIL"), Gone Off Deep, LLC d/b/a Gamecock Media Group ("Gamecock"), Terry Phillips ("Phillips") and Melanie Mroz ("Mroz.")

3. SIL is a wholly owned subsidiary of SIC.

4. Gamecock is a wholly owned subsidiary of Vid Sub, LLC which is a wholly owned subsidiary of SIC.

5. Phillips is the Chairman of SIC and SIL.

6. Mroz is the Chief Executive Officer of SIL.

7. On June 15, 2007, Gamecock and TimeGate entered into a Publishing Agreement (the "Publishing Agreement") to develop Section 8 video game (the "Game.")

8. In the Publishing Agreement, TimeGate agreed that it would "use its best efforts to develop a high quality Game."

9. Under the terms of the Publishing Agreement, the development period for the Game was June 15, 2007 through the end of August, 2009, when TimeGate delivered the "Gold Master" version of the Game to the publisher (the "Development Period.").

10. The Publishing Agreement required TimeGate to invest $2.5 million of its own money into the development of the Game during the Development Period.

11. TimeGate represented that it would invest $2.5 million of its own money into the development of the Game during the Development Period.

12. The Publishing Agreement required TimeGate to have already invested $500,000.00 of its own money into the development of the Game before the Development Period began.

13. The Publishing Agreement required the publisher to invest $7.5 million into the development of the Game during the Development Period, in the form of "milestone payments" that were to be paid directly to TimeGate at certain intervals during the development process, in addition to agreeing to manufacture, market, distribute and sell the Game for the Xbox 360 and personal computer ("PC") video gaming platforms.

14. The Publishing Agreement required TimeGate to invest $2.5 million of its own funds, plus the $7.5 million it received from the publisher, for a total of $10 million, into the development of the Game during the Development Period.

15. On October 10, 2008, Gamecock and SIL entered into an Agreement ("Sublicense Agreement") whereby Gamecock appointed SIL as its exclusive worldwide distributor of the Game. SIL agreed that it would pay the remainder of Gamecock's incremental payments due TimeGate under the Publishing Agreement and that it would pay for all manufacturing costs and first party license fees. SIL further agreed that it would pay and assume costs and expenses

associated with sales, marketing and distribution of the Game. Finally, the Sublicense Agreement gave SIL the right to provide concessions, including all retail mark-downs and other concessions to retailers and other re-sellers. As of October 10, 2008, SIL effectively became the Publisher of the Game. TimeGate consented to SIL performing Gamecock's role as publisher under the Publishing Agreement, and accepted the development funding investment payments paid to it by SIL.

16. Of the $7.5 million in development funding investment it received from Gamecock and SIL, TimeGate spent only $6,756.547.24 for the development of the Game during the Development Period.

17. TimeGate did not invest any of its own monies into the development of the Game during the Development Period.

18. TimeGate did not invest the $10 million development budget required by the Publishing Agreement into the Game during the Development Period.

19. TimeGate never intended to invest $2.5 million of its own money into the development of the Game during the Development Period.

20. TimeGate failed to use its best efforts to develop a high quality Game.

21. TimeGate is not entitled to any reimbursement from Net Revenues for Developer's Development Funding because TimeGate failed to invest the Developer's Development Funding into the Game.

22. Royalty reports were to be provided to TimeGate once per quarter but no later than 45 days after the close of the quarter.

23. The content of the royalty reports was limited to "the number of Game Units sold through, the Gross Revenues attributable thereto per territory, a detailed listing of all deductions

and offsets, including GOGS."

24. All of the royalty reports provided to TimeGate by Gamecock and/or SIL contained the number of Game Units sold through, the Gross Revenues attributable thereto per territory, a detailed listing of all deductions and offsets, including GOGS, and were therefore in conformity with Section 7.1 of the Publishing Agreement.

25. Gamecock incurred a cash loss arising from its obligations under the Publishing Agreement of $4,223,920.00. SIL incurred a cash loss arising from its obligations under the Publishing Agreement of $3,125,813.57.

26. In the Publishing Agreement, TimeGate agreed that Gamecock would have "the right of first refusal and last matching option for Add-Ons, Ports and one sequel."

27. The right of first refusal and last matching option extended to a port of the Game for the PlayStation 3 ("PS3.")

28. TimeGate did not receive an offer from a third-party publisher for the PS3 for the Game, and did not provide Gamecock with an offer from a third-party publisher for the PS3 for the Game.

29. TimeGate did not provide Gamecock with a last option to match a third-party publisher's offer to publish the PS3 port for the Game.

30. TimeGate self-published the PS3 port for the Game in the Spring of 2010.

31. TimeGate received monies from the sale of the PS3 port of the Game that it did not share with Gamecock or SIL.

32. TimeGate was working on *Section 8: Prejudice* (the "Sequel") concurrently with developing the Game.

33. TimeGate did not provide Gamecock with the opportunity to publish the Sequel.

34. TimeGate self-published the Sequel in 2011.

35. TimeGate received monies from the sale of the Sequel that it did not share with Gamecock or SIL.

37. On or about April 22, 2008, Gamecock and IC Europe, B.V. ("1C") entered into an Agreement for the publishing, licensing and distribution of the PS3 port of the Game in Russia, Belarus, Estonia, Latvia, Lithuania, Ukraine, Armenia, Azerbaijan, Georgia, Kazakhstan, Kyrgystan, Moldavia, Talikistan, Turkmenistan, Uzbekistan, Hungary, Poland, Czech Republic and Slovakia (the 1C 2008 Contract.")

38. The 1C 2008 Contract provided that 1C would have the right to market and distribute the PS3 port of the Game in Europe, contingent upon two factors, namely: (1) Gamecock first obtaining the right to market and distribute the PS3 port of the Game, and (2) Gamecock releasing the PS3 port of the Game in Europe. Neither factor occurred, and 1C never published or distributed the PS3 port of the Game.

39. On or about May 28, 2008, 1C paid Gamecock a "Recoupable Advanced Royalty" of approximately $250,000.00 in anticipation of receiving the localized versions of the Game for distribution in Europe once TimeGate finished the development of the Game, which Gamecock was obligated to repay to IC in certain circumstances.

42. The Recoupable Advanced Royalty from 1C was deferred revenue, and Gamecock properly accounted for the Recoupable Advanced Royalty as deferred revenue in the books and records of Gamecock.

43. On October 29, 2009, TimeGate and Gamecock signed Amendment No. 5 to the Publishing Agreement ("Amendment No. 5."), in which TimeGate agreed to provide Gamecock with a Russian-localized version of the Game. TimeGate received payment in full for the

Russian-localized version of the Game, but failed to deliver it to Gamecock or SIL.

44. 1C localized the Russian-version of Game itself, and began distributions of the Game in Russia in Summer 2010, at which time the $250,000 1C payment became Gross Revenue for the first time, and was properly accounted for by SIL on the Q3 2010 royalty report.

45. On September 21, 2009, TimeGate and Gamecock signed Amendment No. 4 to the Publishing Agreement ("Amendment No. 4."), in which TimeGate agreed to provide downloadable content, including avatars. Some of the downloadable content provided by TimeGate was corrupt and therefore unusable, and TimeGate refused to replace these files on request.

46. The Publishing Agreement provided that Gamecock had the right to continue to market and distribute the Game for a period of nine (9) months after termination by TimeGate regardless of the reason for termination.

47. On December 1, 2009, TimeGate sent its demand for arbitration, which it withdrew on December 9, 2009.

48. On December 10, 2009, TimeGate filed its Original Petition in the United States District Court for the Southern District of Texas — Houston Division against SIC and Gamecock for alleged breaches of the Publishing Agreement and alleged infringements of TimeGate's intellectual property. On July 19, 2010, Judge Keith Ellison, United States District Court for the Southern District of Texas — Houston Division, ordered this matter to arbitration.

49. On December 10, 2009, TimeGate sent a written Notice of Termination of the Publishing Agreement to David Stelzer, an attorney for SIL.

50. TimeGate's stated reason for termination was Gamecock's "insolvency as set forth in an independent accounting on September 30, 2008." There is no evidence that Gamecock was

insolvent, meaning unable to pay its debts as they matured, on December 10, 2009 or any other time.

51. Under the terms of the Publishing Agreement, TimeGate only had the right to terminate the Publishing Agreement for material breach if it provided written notice of the breach, and such breach was not cured within 30 days. As of December 10, 2009, there had been no material breach of the Publishing Agreement by either Gamecock or SIL that TimeGate had provided written notice of, and that had not been cured within the 30-day cure period.

52. On December 11, 2009, TimeGate requested that SIL continue to sell the Game until the Notice of Termination sent the day before was "deemed valid."

53. On January 25, 2010, SIL sent a Notice of Material Breach to TimeGate arising from its refusal to provide the downloadable content it had agreed to provide in Amendment No. 4, and its failure to provide the Russian SKU it had agreed to provide in Amendment No. 5. TimeGate did not cure either of these material breaches.

54. Under Section 2.1 of the Publishing Agreement, the publisher had the right to distribute the Game utilizing "any method of distribution, now known or hereafter devised electronic or otherwise." On February 10, 2009, TimeGate refused to provide access codes that were necessary for SIL to distribute the game through 2 websites known as OnLive and Otoy, and SIL was therefore unable to sell the Game through these websites. TimeGate cited to its Notice of Termination as justification for refusing to provide this information.

55. There is no evidence to support any claim by TimeGate against SIC, Terry Phillips, or Melanie Mroz.

56. Section 20.3 of the Publishing Agreement provides that the prevailing party in an arbitration conducted as a result of a "dispute hereunder" shall be entitled to an award of its

attorneys' fees and costs.

57. Respondents are prevailing parties in this arbitration, and are entitled to recover their attorneys' fees and costs from TimeGate.

## CONCLUSIONS OF LAW

1. For all purposes of, for, relating to, and/or arising out of the Publishing Agreement, Gamecock and SIL operate as alter egos of each other by admission.

2. Under the terms of the Publishing Agreement, revenue from the selling of a Game Unit becomes "Gross Revenue" only when that revenue is actually received for a Game Unit that has actually been sold through, meaning that it has been sold to the end user.

3. Under the terms of the Publishing Agreement, the term "COGS" includes all of the costs incurred for the categories listed in Section 1.6 (the definition of COGS) that have been incurred by the Publisher, not just the costs for Game Units that have been "actually sold," as proffered by TimeGate.

4. Under the terms of the Publishing Agreement, "Net Revenue" is calculated by deducting all COGS incurred by the publisher through the date of such calculation from all Gross Revenue received by the Publisher through the date of such calculation.

5. Under the terms of the Publishing Agreement, the parties are only reimbursed under Section 6.2(a) for Development Funding that they have actually spent, in proportion to the amount of such spent Development Funding that remains unreimbursed.

6. Under the terms of the Publishing Agreement, TimeGate is not entitled to any portion of the Net Revenue, as TimeGate did not invest the Developer's Development Funding into the Game during the Development Period, and there is therefore no portion of such Developer's Development Funding that TimeGate is entitled to be reimbursed for.

FINAL AWARD, FINDINGS OF FACT AND CONCLUSIONS OF LAW - PAGE 10 OF 15

7. Under the terms of the Publishing Agreement, Gamecock had the right to enter into the "Agreement" with SIL dated October 10, 2008, and the sublicenses contained therein, without the written permission of TimeGate, and such Agreement was a valid sublicense of Gamecock's rights under the Publishing Agreement.

8. Under the terms of the Publishing Agreement, Gamecock had the right to enter into the "Publishing, License and Distribution Agreement" with 1C Europe, BV, dated April 22, 2008, and the sublicenses contained therein.

9. Under the terms of the Publishing Agreement, the approximately $250,000.00 that Gamecock received from 1C Europe, BV, on or about May 28, 2008, was not "Gross Revenue" as that term is defined in the Publishing Agreement at the time it was received.

10. The term "insolvent," as it is used in the Publishing Agreement, means the inability to pay debts as they mature or become due.

11. TimeGate only had the right to terminate the Publishing Agreement for Gamecock's insolvency if Gamecock was insolvent, meaning unable to pay its debts as they became due, at the time that the right to terminate was exercised by TimeGate.

12. TimeGate only had the right to terminate the Publishing Agreement for material breach if there was a material breach that TimeGate provided written notice of, and the breaching party failed to cure such material breach within 30 days. As of December 10, 2009, the date that TimeGate sent its Notice of Termination to SIL, neither SIL nor Gamecock were in material breach of the Publishing Agreement.

13. In the event that the Publishing Agreement had been properly terminated by TimeGate, which it was not, the publisher would have had an additional nine (9) months beyond the date of such termination to market and distribute the Game.

14. TimeGate did not have the right to terminate the Publishing Agreement on December 10, 2009, as there is no evidence that Gamecock was insolvent on December 10, 2009, and this was the only stated basis provided by TimeGate for terminating the Publishing Agreement, and TimeGate's Notice of Termination dated December 10, 2009, is therefore invalid and of no force or effect.

15. The Publishing Agreement is hereby amended as a matter of law that Gamecock and SIL have a perpetual license for TimeGate's intellectual property in the Game, and Gamecock and SIL have no obligation to report to TimeGate about sales of the Game that use any of TimeGate's intellectual property, nor do Gamecock and SIL have any legal obligation to pay any royalties to TimeGate under the Publishing Agreement, and Gamecock and SIL may create Sequels, Ports, Add-Ons related to the Game.

16. The Publishing Agreement is hereby amended as a matter of law that TimeGate may create Sequels, Ports, Add-Ons related to the Game, or other competing products, and effective the date of this Award the Publishing Agreement is hereby amended that TimeGate has no legal duty to pay any royalties to Gamecock or SIL related to the Game.

17. The Publishing Agreement is hereby amended as a matter of law that Gamecock or SIL may create Sequels, Ports, Add-Ons related to the Game, or other competing products, and effective the date of this Award the Publishing Agreement is hereby amended that neither Gamecock nor SIL has no legal duty to pay any royalties to TimeGate related to the Game.

18. TimeGate has failed to prove by a preponderance of the evidence that it complied with the Publishing Agreement.

19. TimeGate has failed to prove by a preponderance of the evidence that either Gamecock or SIL breached the Publishing Agreement.

20. TimeGate has failed to prove by a preponderance of the evidence any cause of action against any Respondent.

21. TimeGate's claim of Quantum Meruit fails as a matter of law, as the relationship of TimeGate to Gamecock and SIL was governed by a written contract.

22. TimeGate's claim for Copyright Infringement fails as a matter of law, as the rights TimeGate claims were infringed were governed by the Publishing Agreement, and were properly assigned to SIL pursuant to the "Agreement" dated October 10, 2008, both of which are valid, enforceable contracts that remain in force to this day.

20. TimeGate's claim for Attorney's fees fails as a matter of law, as TimeGate has not prevailed on any claim that would entitle it to attorney's fees.

21. Gamecock and SIL have proven by a preponderance of the evidence that they complied with the Publishing Agreement.

22. Gamecock and SIL have proved by a preponderance of the evidence that TimeGate materially breached the Publishing Agreement by:

   (1) failing to invest $2.5 million in Developer's Development Funding into the Game;

   (2) failing to invest the full $10 million of the Development Budget into the Game;

   (3) retaining a portion of the Publisher's Development Funding it received from Gamecock and SIL;

   (4) failing to use its best efforts to develop a high quality Game;

   (5) filing suit in federal court rather than pursuing arbitration;

   (6) failing to provide fully functioning versions of the downloadable content it had agreed to provide in Amendment 4 to the Publishing Agreement;

   (7) failing to provide the Russian SKU it had agreed to provide in Amendment 5 to the Publishing Agreement;

   (8) failing to provide the necessary access codes for SIL to market and distribute the Game electronically through the Onlive and Otoy websites;

(9) failing to provide Gamecock or SIL with the "last option" to publish the PS3 port of the Game;

(10) failing to provide Gamecock or SIL with the right of first refusal to publish the sequel to the Game, entitled "Prejudice";

(11) publishing the PS3 port of the Game; and

(12) publishing the Sequel to the Game.

23. Gamecock and SIL have proven by a preponderance of the evidence that TimeGate induced Gamecock to enter into the Publishing Agreement by fraud, and induced SIL to continue to honor the Publishing Agreement by fraud, as it promised to invest $2.5 million in Developer's Development Funding as set forth in the Publishing Agreement, without intending to do so, and Gamecock and SIL relied upon such promise to their detriment in entering into, and continuing to honor, the Publishing Agreement.

24. Gamecock and SIL, as alter egos and/or assignees of each other, are entitled to recover their reliance damages as a consequence of TimeGate's material breaches of the Publishing Agreement and its Fraud in the Inducement in the total amount of $7,349,733.57, encompassing the amount of $4,223,920.00 for losses incurred directly by Gamecock and $3,125,813.57 for losses incurred directly by SIL, from TimeGate, plus pre judgment and post-judgment interest thereon.

25. For the purposes of calculating pre judgment interest, the date that shall be used is December 10, 2009, the date that TimeGate sent a written notice purporting to terminate the Publishing Agreement, and which it later cited to as its justification for refusing to honor its obligations under the Publishing Agreement.

26. TimeGate is liable to Respondents for attorney's fees, expenses and costs incurred by them in prosecuting the claims against TimeGate and in defending the claims brought by

TimeGate pursuant to the Publishing Agreement.

27. This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims and counterclaims not expressly granted here are hereby, denied.

Ordered on November 3, 2011.

_____
Peter S. Vogel, Arbitrator

## AMERICAN ARBITRATION ASSOCIATION
### Commercial Arbitration Tribunal

In the Matter of the Arbitration between:

Re: 70 117 Y 00673 10
   TimeGate Studios, Inc.
   and
   Gone Off Deep, LLC d/b/a Gamecock
   Media Group; SouthPeak Interactive, LLC;
   SouthPeak Interactive Corporation; Terry Phillips;

### DISPOSITION FOR APPLICATION OF MODIFICATION OF AWARD

I , THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, and having previously rendered an Award dated November 3, 2011, and Respondent having filed an application for modification dated December 14, 2011, and Claimant having responded via email dated December 14, 2011, and upon review of the November 3, 2011 Final Award I found an inadvertent error about payment of the administrative fees and expenses of the American Arbitration Association, and accordingly I hereby Order the replacement of the second full paragraph on page 3 November 3, 2011 Final Award with the following:

> The administrative fees and expenses of the American Arbitration Association totaling $28,150.00, and the compensation and expenses of the arbitrator totaling $69,576.22 shall be borne by TimeGate Studios, Inc. Therefore, TimeGate Studios, Inc. is liable to reimburse SouthPeak Interactive, LLC and Gone Off Deep, LLC the total sum of $50,488.11, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by SouthPeak Interactive, LLC and Gone Off Deep LLC.

In all other respects the Award dated November 3, 2011, is reaffirmed and remains in full force and effect.

_____
Peter S. Vogel

DATE: January 4, 2012